## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**In re:**

**JUST ONE DIME COACHING, LLC,** *et. al.*

**Debtors**

**Case No. 22-10783-TMD**
**Chapter 7**

---

**MINNS FIRM CLIENTS**

**vs.**

**DANILO VARRIALE; DANMARK, INC.; DANVID, f/k/a BEARDMAN COMPANY CORP.; DAGABIA, INC.; DSD IMPORTS BROS., LLC; BRETT GEORGE; N2 ECOM, LLC; AKH INVESTMENTS, LLC; BOH SOLUTIONS, LLC; DAVID LOPEZ; VICTORIA ECOM, LLC; LUXEUP, INC.; VICTORIA STATE, LLC; APPS INNOVATION, INC.; PATRICK CUPILLARI; AND THE SKUNK LABS, LLC; TRAVIS SETH KNIEP; JOSIAH KNIEP; KIMBERLY KNIEP; AND AUDREY "ATALIE" KNIEP**

**ADV. PRO. NO. _____**

---

## ORIGINAL COMPLAINT

---

TO THE HONORABLE TONY DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs, the Minns Firm Clients, named individually in Appendix A attached hereto, by and through their undersigned counsel, file this Original Complaint (this "Complaint") against Defendants (collectively the "Knieps" and "Brand Builders" or "Defendants") respectfully stating as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the standing Western District of Texas Order of Reference of Bankruptcy Cases and Proceedings.

2.     This matter arises under the laws of the United States of America. This Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(a) and (b) and a matter that arises exclusively under the provisions of the Bankruptcy Code, as to which the Court accordingly has power consistent with the United States Constitution to enter a final judgment.

3.     Venue of this Adversary Proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## II.    PARTIES

4.      On November 23, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case.  On the Petition Date, Randolph N. Osherow (the "Trustee") was appointed as interim Chapter 7 trustee.  *See* Docket No. 2.  The meeting of creditors was held under section 341 of the Bankruptcy Code and concluded on January 2, 2023.

5.      The Rain Minns Law Firm represents sixty-eight (68) creditor parties in the Bankruptcy Case (the "Minns Firm Clients" or "Plaintiffs").  The Minns Firm Clients group is comprised of persons and entities who conducted business with Just One Dime Coaching ("JODC") prior to the Petition Date.  The Minns Firm Clients have filed individual proofs of claim in the Bankruptcy Case asserting certain unsecured claims against the Debtor which total $4,336,334.62, and which are itemized on Schedule 1 attached hereto, and incorporated herein by reference for all purposes.

6.      Prior to the Petition Date, certain of the Minns Firm Clients also initiated lawsuits against the Debtor, its principals, and certain other persons and entities (collectively, the "Minns Law Litigation") in the United States District Court for the Western District of Texas (the "District Court"), which cases are

pending and are itemized on Schedule 2, attached hereto, and incorporated herein by reference for all purposes.

7.    Following the Petition Date, the Trustee appeared in the Minns Law Litigation, which cases have since been consensually stayed pursuant to Bankruptcy Code section 362 and successive consent orders entered by the District Court providing for same.

8.    The Minns Firm Clients further assert that they (jointly and severally) entered/are entering into a Settlement Agreement with the Creditors' Trustee (as the Chapter 7 Trustee for Just One Dime Coaching, LLC), under which Plaintiffs are to pay certain consideration for the rights to pursue Causes of Action belonging to the Debtor.

9.    Danilo Varriale, an individual, is a Defendant herein and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to Mr. Varriale's place of business, 19573 SW 42nd Ct., Miramar, Florida, 33029, and/or by service of process to 19573 SW 42nd Ct., Miramar, Florida, 33029.

10.    Danmark, Inc., an entity incorporated under the laws of the State of Florida, is a Defendant herein and may be served with process pursuant to Fed. R.

Bankr. P. 7004(b) by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to Danmark, Inc.'s registered agent for service of process, Mike's Tax & Accounting, Inc. 296 University Drive, Suite B, Pembroke Pines, Florida, 33024, and/or by service of process to Mike's Tax & Accounting, Inc. 296 University Drive, Suite B, Pembroke Pines, Florida, 33024.

11.     Danvid, Inc. f/k/a Beardman Company Corp., an entity incorporated under the laws of the State of Florida, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to Danmark, Inc.'s registered agent for service of process, Danilo Varriale, 17992 SW 41st Street, Miramar, Florida, 33029, and/or by service of process to 17992 SW 41st Street, Miramar, Florida, 33029.

12.     Dagabia, Inc., an entity incorporated under the laws of the State of Florida, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to Dagabia, Inc.'s registered agent for service of process, Mike's Tax and Accounting, Inc., 269 University Drive, Suite B, Pembroke Pines, Florida, 33024,

and/or by service of process to Mike's Tax and Accounting, Inc., 269 University Drive, Suite B, Pembroke Pines, Florida, 33024.

13.  Brett George, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to his home address, 3611 Blue Stem Drive, Tuttle, Oklahoma, 73089, and/or by service of process to 3611 Blue Stem Drive, Tuttle, Oklahoma, 73089.

14.  N2 ECOM, LLC, an entity, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, its registered agent for service of process, Brett George, 4313 Bridge Wood Lane, Oklahoma City, Oklahoma, 73179, and/or by service of process to 4313 Bridge Wood Lane, Oklahoma City, Oklahoma, 73179.

15.  AKH Investments, LLC, an entity incorporated under the laws of Oklahoma, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to AKH Investments, LLC's registered agent for service of process, Brett

George, 4313 Bridge Wood Lane, Oklahoma City, Oklahoma, 73179, and/or by service of process to 4313 Bridge Wood Lane, Oklahoma City, Oklahoma, 73179.

16.    BOH Solutions, LLC, an entity incorporated under the laws of the State of Oklahoma, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b) by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to AKH Investments, LLC's registered agent for service of process, Brett George, 4313 Bridge Wood Lane, Oklahoma City, Oklahoma, 73179, and/or by service of process to 4313 Bridge Wood Lane, Oklahoma City, Oklahoma, 73179.

17.    David Lopez, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to 15011 SW 11th Street, Miami, Florida, 33194, and/or by service of process to 15011 SW 11th Street, Miami, Florida, 33194.

18.    Victoria ECom, LLC, an entity incorporated under the laws of the State of Florida, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail,

postage prepaid, to its registered agent for service of process, LGA Services, LLC, 5201 Blue Lagoon Drive, Suite 908, Miami, Florida, 33126, and/or by service of process to 5201 Blue Lagoon Drive, Suite 908, Miami, Florida, 33126.

19.     Luxeup, Inc., an entity incorporated under the laws of the State of Florida, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to its registered agent for service of process, David Lopez, 15011 SW 11th Street, Miami, Florida, 33194, and/or by service of process to 15011 SW 11th Street, Miami, Florida, 33194.

20.     Victoria State, LLC, an entity incorporated under the laws of Florida, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to its registered agent for service of process, David Lopez, 15011 SW 11th Street, Miami, Florida, 33194, and/or by service of process to 15011 SW 11th Street, Miami, Florida, 33194.

21.     Patrick Cupillari, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of

this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to Patrick Cupillari at Skunk Labs, LLC, 78 John Miller Way, Suite 228, Kearny, NJ 07032, and/or by service of process to 78 John Miller Way, Suite 228, Kearny, NJ 07032.

22.     The Skunk Labs, LLC, an entity incorporated under the laws of the State of New Jersey, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to its registered agent for service of process, Patrick Cupillari at Skunk Labs, LLC, 78 John Miller Way, Suite 228, Kearny, NJ 07032, and/or by service of process to 78 John Miller Way, Suite 228, Kearny, NJ 07032.

23.     Travis Seth Kniep, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to 13306 Perthshire Street, Austin, TX 78729, and/or by service of process to 13306 Perthshire Street, Austin, TX 78729.

24.     Josiah Kniep, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S.

first class mail, postage prepaid, to 13306 Perthshire Street, Austin, TX 78729, and/or by service of process to 13306 Perthshire Street, Austin, TX 78729.

25. Kimberly Kniep, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to 13306 Perthshire Street, Austin, TX 78729, and/or by service of process to 13306 Perthshire Street, Austin, TX 78729.

26. Audrey "Atalie" Kniep, an individual, is a Defendant in this case and may be served with process pursuant to Fed. R. Bankr. P. 7004(b), by mailing a copy of this Complaint and the duly issued Summons in this Adversary Proceeding, via U.S. first class mail, postage prepaid, to 13306 Perthshire Street, Austin, TX 78729, and/or by service of process to 13306 Perthshire Street, Austin, TX 78729.

27. The term "Brand Builders" shall include Danilo Varriale, Brett George, David Lopez, Patrick Cupillari, and their associated business entities as named herein.

28. The term "Kniep" shall refer to Travis Seth Kniep, while the term "Knieps" or "Kniep Defendants" shall refer to Travis Seth Kniep, Josiah Kniep, Kimberly Kniep, and Audrey "Atalie" Kniep.

## III.   ADDITIONAL FACTUAL BACKGROUND

29.     Seth Kniep was the founder and leader of the now-defunct Just One Dime ("JOD")/Done For You ("DFY") program.  The program purported to provide investors with "turnkey" service in building and running a store on the Amazon website.  All work would be done by JOD.  There were numerous entities under the JOD umbrella, including Just One Dime Coaching, ("JODC").

30.     The Done for You Program began in 2018.

31.     JOD heavily recruited investors for the Done for You program, mostly through online advertising campaigns.

32.     JOD pledged that it would launch only high-ticket products with strong margins.

33.     In a cash flow example using a product that sold for $100, JOD asserted that $60 went to costs (including $15 to Just One Dime) and the remaining $40 went to the seller.

34.     JOD promised that investors would eventually be able to resell their JOD businesses for at least 50 times their original investments.

35.     What Plaintiffs learned after sinking thousands of dollars into the JOD program is that it did *not*, in fact, provide turnkey service, it did *not* provide high-ticket items, and it did *not* provide anything approaching a 40% cut to the seller.

36.     Numerous JOD investors, including Plaintiffs, relied on JOD's promises to their detriment.

37.     While Seth Kniep was the face of JOD, it was the JOD "Brand Builders" who were charged with the daily operation of the business and who had the most direct contact with investors, manufacturers, and shippers.

38.     The Brand Builders were independent contractors of JOD. They were ostensibly responsible for researching and sourcing the investors' products, arranging for manufacturing and shipping, and setting up and monitoring the investors' Amazon stores.

39.     For varying lengths of time over the life of the Done For You program, defendants Danilo Varriale, Brett George, David Lopez, and Patrick Cupillari (and certain of their companies) were JOD Brand Builders. The Kniep Defendants were also heavily involved.

40.    On information and belief, Defendant Danilo Varriale trained one or all of the other brand builders.

41.    A majority of the Services Agreements into which JOD investors entered required investors to pay an initial fee of $10,000 per product, with a minimum of three products. This was typically considered a "development fee" that went entirely to "overhead" costs. The Brand Builders were paid 67% of the investors' development fees off the top. Additional costs for the investors included purchasing the inventory they were to sell, shipping costs for those products, and advertising on Amazon. These extra costs were considerable, and many of the investors never received the products for which they had paid.

42.    JOD claimed it was highly selective in choosing its investors, would have a limited number of investors, and went through the motions of screening prospective investors. In truth, JOD accepted anyone and everyone who was willing to pay its initiation fees. This resulted in many of its investors competing against each other for sales of essentially the same products. It also meant the Brand Builders were stretched thin. But they were paid well regardless of whether they successfully performed their duties.

43.    On October 14, 2022, Defendant Travis Kniep sent a form e-mail to JOD investors stating that the Done For You program would be ending on October

28, 2022. Defendant Travis Kniep reiterated that there will be no refunds for Done For You investors, but that investors were welcome to participate in JOD's Online Arbitrage program, which required payment of an additional $20,000 to fund products.[1]

44.     On November 23, 2022, Just One Dime Coaching, LLC filed for Chapter 7 bankruptcy.

45.     A number of the Plaintiffs in this Complaint filed suit against a number of the Defendants in the Western District of Texas (*see* Schedule 2, Minns Law Litigation).

46.     From about 2018 through October 14, 2022, the Brand Builders and their personally owned companies devised and implemented a scheme to defraud JOD investors by false and fraudulent pretenses, representations, and promises.

## IV.    <u>CAUSES OF ACTION</u>

### COUNT 1 – *Breach of Contract*

47.     Plaintiffs incorporate the preceding paragraphs as if repeated fully here.

---

[1] *See* Exhibit 1, Defendant Travis Kniep's 10/14/2022 form e-mail to investors.

48.     Plaintiffs contend they are third party beneficiaries to the contracts titled Amazon Store Builders Independent Partner Agreement[2] which Just One Dime Coaching (the "Company") and the Brand Builders and their individually owned companies (designated "the Partner") entered into.

49.     Exhibit A to the Amazon Store Builders Independent Partner Agreement stated that the Brand Builders would provide the following services for JOD investors:

- Open a new Amazon store for Client and give Company full admin access to the account.

- Research the market for high potential products.

- Find suppliers, build out a differentiation plan and manage the sourcing of the products.

- Manage the design process for retail packaging and company branding.

- Manage all logistics and shipping for the products from the supplier to Amazon's fulfillment centers.

- Create high-conversion listing and oversee photo and video creation for the listings.

- Outline a plan to launch the products on Amazon and scale them as rapidly as possible to high ranking and conversion.

- Create a holistic brand-building strategy for the products on Amazon.

---

[2] *See* Exhibit 2, Amazon Store Builders Independent Partner Agreement.

- Split test the Amazon listings for conversion and optimize them for sales.

- Create a follow up sequence for Amazon customers so we can collect their  contact info and drive them to a landing page, social media page, or other platform.

- Apply for brand-protection programs on Amazon so that no one can piggy-back the listing.

- Build, test, and optimize Amazon PPC ads on the listings to increase ranking and conversion.

- Strategize new product launches by using PPC reports to find product variations shoppers are searching that no one is selling.

- Build and implement Amazon promotion launches, create Amazon-compliant motivation for organic 5-star reviews, and improve the listing's conversion based on PPC keyword reports.

- Identify and leverage trends for new products we can launch as complements to the main product.

- Differentiate the Amazon listing and products from competition Amazon.

- Ensure we are Amazon compliant and brand proof so the Amazon account remains healthy.

- Test various product lines on Amazon for real time customer feedback and proof of concept to determine the most profitable products to launch first.

- Identify and address hijackers, copycats, and copyright-infringing competitors.

- Respond to critical reviews and negative seller feedback.

50.    On information and belief, the Brand Builders divided their duties among themselves, so that Defendant Varriale was the product researcher, Brett

George was the product purchaser, and Patrick Cupillari was the account manager. However, due to excessive workloads, the Defendant Brand Builders were likely servicing the accounts of JOD investors beyond those specifically assigned to them.

51. A third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). By including Exhibit A in their contract, the parties to the contract (JOD and the Brand Builders) indicated their intent to secure a benefit to third-party investors such as Plaintiffs.

52. The Brand Builders were contractually bound to locate products that were marketable and competitive and were likely to garner five-star reviews on Amazon. The Brand Builders failed in their contractual duties, as many of the Plaintiffs found the products the Brand Builders assigned them to be subpar and/or defective, with high return rates.

53. The Brand Builders were also contractually responsible for managing the shipment of products. The Brand Builders failed in those contractual duties in

that shipments of the products assigned to many of the Plaintiffs were delayed, and some products never reached Plaintiffs.

54.     Plaintiffs suffered damages as a proximate cause of Defendants' breach of contract.

### COUNT 2 – *Conspiracy to Commit Fraud*

55.     Plaintiffs incorporate the preceding paragraphs as if repeated fully here.

56.     First, all of the Brand Builders and Kniep were members of a combination of two or more persons.

57.     Second, the object of the combination was to accomplish (1) an unlawful purpose, or (2) a lawful purpose by unlawful means, the other claims in this Complaint.

58.     Third, the members of the said group had a meeting of the minds on the object or course of action.  On information and belief, the Brand Builders met in person once a month at the JOD headquarters in Austin.

59.     Fourth, one or more of the members committed an unlawful, overt act to further the object or course of the action; to wit:  Defendants obtained shipping discounts on bulk shipments of their investors' products from China, but

Defendants did not pass those discounts on to the investors. Instead, they kept the discounts for themselves. This was a system worked out by the Brand Builders and Kniep.

60.    The Brand Builders controlled the prices investors' products were listed for on Amazon. On information and belief, Defendants colluded to fix product prices to their advantage, since the Brand Builders were selling some of the same products as the investors.

61.    Unbeknownst to JOD investors, Brand Builders with privately owned shipping services used those services to ship investors' products, thereby comingling funds and profiting from the practice. Kniep's contracts with the Brand Builders showed their shared interest to keep this and other details of their relationship hidden from the Plaintiff investors.

62.    Plaintiffs suffered damages as a proximate cause of Defendants' improper actions.

### COUNT 3 – *Unjust Enrichment*

63.    Plaintiffs incorporate the preceding paragraphs as if repeated fully here.

64.    Under Texas law, an unjust enrichment claim requires showing that one party "has obtained a benefit from another by fraud, duress, or the taking of

an undue advantage." *Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.*, 965 F.3d 365, 379-380 (5th Cir. 2020), quoting *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment is not a distinct independent cause of action, but rather a theory of recovery. *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied). Nonetheless, Texas courts do not foreclose the possibility that a litigant may show the taking of an undue advantage without showing the violation of a law or legal duty. *See Dig. Drilling Data Sys.*, 965 F.3d at 382.

65. Defendants' conduct in accepting Plaintiffs' investment without carrying out their duties as independent contractors and improperly using these funds for themselves constitutes more than unfair conduct; Defendants profited from their own fraudulent behavior and took undue advantage of Plaintiffs. Thus, Plaintiffs seek damages in unjust enrichment as an alternative remedy.

## V. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, the Minns Firm Clients, respectfully request the Court to enter judgment against the Defendants on account of each of the claims and causes asserted by Plaintiffs herein, and specifically and expressly grant them the following relief:

    a. Actual and economic damages including liquidated and unliquidated damages;

    b. Punitive damages, where appropriate;

    c. Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law;

    d. Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law from the date of judgment until paid in full;

    e. Court costs;

    f. Attorney fees; and

    g. All other relief, special or general, legal or equitable, as Plaintiffs may be shown to be justly entitled to receive.

Respectfully submitted on this 28th day of November, 2023.

Rain Levy Minns Udall
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

ATTORNEY IN CHARGE FOR PLAINTIFFS
MINNS LAW FIRM CLIENTS GROUP

# APPENDIX 1
## MINNS LAW FIRM CLIENTS

| CLT # | CLIENT/ENTITY |
|-------|---------------|
| 1 | **Oakes**, Michael / Ondeblu |
| 2 | **Jacome**, Juan / Juela, LLC |
| 3 | **Gray**, Patrice / Patrice Gray LLC |
| 4 | **Krichman**, Travis |
| 5 | **Bonnici**, Anton |
| 6 | **Mutendereki**, Richard |
| 7 | **Iremizi**, David |
| 8 | **Franco**, David |
| 9 | **Paniq 1**, LLC |
| 10 | **Infinity 3**, LLC |
| 11 | **Galan**, Ben |
| 12 | **Fenzo**, Luigi |
| 13 | **Zaman**, Tanvir |
| 14 | **Loi**, Tan |
| 15 | **Basaran**, Gokhan |
| 16 | **Aalerud**, Nick |
| 17 | **Knudsen**, Tiffany / Tk Capitalco LLC |
| 17 | **Subach**, Denice, Deborah Yash / Launch Horse LLC |
| 18 | **White**, John |
| 19 | **Kelley**, Ian |
| 20 | **Martiner**, Gary / Lido Properties, LLC |
| 21 | **Simpson**, Elizabeth |
| 22 | **Kidwai**, Arshina & Asif **Ansari** / Pryme Cloud LLC |
| 23 | **Ta**, Ngoc ("Ivy") |
| 25 | **Habib**, Shahnaz & Quazi **Haque** / IZZ Enterprise LLC |
| 26 | **Cosely**, Melvin |
| 27 | **Donnelly**, Sandra |
| 28 | **Perez**, Joma |
| 29 | **Cummings**, Ryan |
| 30 | **Holzem**, Loren |
| 31 | **McCumber**, Teresa |
| 32 | **Looper**, Sabrina |
| 33 | **Matsumoto**, Gillie |
| 34 | **Mendez**, Jose |
| 35 | **Appea**, Yvonne and Alexander |
| 36 | **Truong**, Leeann |
| 37 | **Duran**, Michael (Don Miguel) |
| 38 | **Herrigel**, Michael / H3 Legacy Partners |
| 39 | **Hughes**, Sion and Dan **Madigan** |
| 40 | **Yang**, Catherine / WMB Studio PTE, Ltd |
| 41 | **Rector**, Joe |

| CLT # | CLIENT/ENTITY |
|-------|---------------|
| 42 | **Pilakka**, Justin / JOD Ecom LLC |
| 43 | **Teshome**, Hermela |
| 44 | **Battung**, Michael |
| 45 | **Lick**, Ted / TWL Brands LLC |
| 46 | **Payumo**, Jon |
| 47 | **Diaz**, Carlos |
| 48 | **Amunson**, Kristi |
| 49 | **Williams**, Doug & Scott **Gibson** / Yellow Marble LLC / DS Works |
| 50 | **Kovalenko**, Mattis |
| 51 | **Rivera-Martinez**, Rodalys |
| 52 | **Gibbons**, Darnell / Ooboo Unlimited LLC |
| 53 | **DeSanctis**, Mark |
| 54 | **Glavcheva**, Veneta |
| 55 | **Wu**, Julius & Diane |
| 56 | **Rendon**, Andrew |
| 57 | **Au-Yeung**, Simon |
| 58 | **Maese**, Claudio |
| 59 | **VanOmmen**, Justin & Courtney |
| 60 | **Rivard,** Hannah |
| 61 | **Morgan**, Maxine / Synergywise LLC |
| 62 | **Yanes Diez**, Angela |
| 63 | **Fuller**, John & Steven **Pirovolikes** |
| 64 | **Thorson**, Evan |
| 65 | **Malik**, Zona & Shmoon **Asghar** |
| 66 | **Claire**, Molly & Aaron ("Bob") **Smith** |
| 67 | **Baseer**, Salman |
| 68 | **Portilla**, Noe |

This is not a fun email to write. Yesterday in our DFY Private Label Client Meetup, we shared some really difficult news.

This is the hardest decision Just One Dime has ever had to make.

To be frank, when we started DFY, we expected to be profitable on your PL store much sooner than now. At this rate, we cannot continue to operate as a company if we continue as we are.

So we have to shut down the DFY private label program completely.

We know this is heart-breaking news. We know this may cause feelings of anger, resentment, discourage and more.

These last few months have been extremely hard for us. We had to let go of our entire content and marketing staff in order to cut our expenses down just to keep operating.

But even with this reduction in costs, the staff and time and funds it takes to scale your private label store is far too great for us to maintain and if we continue as we are, JOD will go out of business in a very short time.

We know you trusted us with your funds and expected us to turn a strong ROI on that. We wanted this more than anything. And I feel sick, embarrassed, and deeply disappointed that we have come to this.

Please note that for anyone who we are building both OA and PL stores for, we will continue your OA store as normal and nothing changes in that regard.

If you were unable to attend the Client DFY Private Label meetup, please watch the DFY PL Client Meetup. This will really help you understand what led to this decision.

Moving forward, here is what we will be doing from now until the end of Friday, October 28, 2022 for your private label store:

      Provide you with all the data on your Amazon store up to this point.

      Show you how to pull a PPC report (if you are interested in managing the store yourself).

      Provide you with instructions on how to leverage Amazon's liquidation program (if you want to sell off your inventory).

      Provide you with the contact information of the 3PL (third party logistics company). holding your products (so you can contact them directly about what you want to do).

      Give you the contact information of your supplier(s) if you have products in production or want to do a restock order

      Give you the contact information of the shipper (if you have products on the boat)

**Exhibit 1**

Give you instructions on how to do a removal order if you have products at Amazon's fulfillment centers and want to have these removed and shipped somewhere else.

Any other data uniquely relevant to your store.

Some of you shared that you would like to manage the private label store yourself and asked for access to FBA Mastery courses. After signing a termination agreement we are willing to give you free and unending access to FBA Mastery, our five courses, at no cost. This is a step-by-step training program on everything FBA. It is this program that has helped many of our students to become millionaires, selling on Amazon.

The products you have invested in while in the DFY PL program are yours as a business owner, and we will provide more details of all information for you depending on the stage you were in in the journey with us within the next two weeks.

There are no refund options, as we simply don't have the money for refunds. However, if we can still double your dime and at the least, make you your money back, we would love the opportunity to do that.

So this is also an invite for us to build an online arbitrage store for you instead. We cannot give a date on when we would start, but at the least we would sign a contract agreeing to do this.

However, we need you to decide by October 28, so we can prepare properly in advance, so that once we do start, we have the systems in place to build your store well.

Do note that online arbitrage requires 20K in funding products but there would be no development fees. We would agree to let the development fees you paid for private label apply to us building you an online arbitrage store instead.

You might be wondering, "Why are you choosing to do online arbitrage stores instead of private label stores?" This is a good question, especially because building an online arbitrage store is more labor intensive than building a private label store.

However, online arbitrage is more scalable, because instead of each store being a unique brand that must be treated as its own individual business, each store is reselling branded products. The focus of a private label store is the brand and as a result, cash flow. The focus of an online arbitrage store is cashflow, but still can be sold for a high price if the buyer receives the standard operating procedures for how to build it.

Because of this massive transition we are going through and the number of emails we are receiving, we cannot email you back as quickly as we would like. We will get back to you by October 28, so please give us time as we work on this transition.

Kniep'n it real,

Seth

**Confidential**

### AMAZON STORE BUILDER INDEPENDENT PARTNER AGREEMENT

This Independent Partner Agreement (the "Agreement") is entered into between **Just One Dime Coaching LLC, a Texas LLC ("Company") with principal address at 8516 Anderson Mill Road, Suite 200 Austin, TX 78729 and N2 ECOM LLC with principal address at 4313 Bridge Wood Ln Oklahoma City, OK 73179 ("Partner").**

Partner will be building, managing, optimizing and scaling an Amazon store for clients if Company and Partner both agree to accept after their application and an interview conducted by Company and Partner. Clients from here on will be referred to as "Client."

The parties agree as follows effective the August 14, 2020 ("Effective Date"):

**1. BACKGROUND AND PURPOSE.** Subject to the terms and conditions of this Agreement, Company hereby engages Partner as an independent Partner to perform the services and duties set forth below and on Exhibit A of this Agreement ("Services"), and Partner hereby accepts such engagement. For purposes of intellectual property protection under this Agreement, Company is the commissioning party.

**2. SERVICES AND COMPENSATION.** Partner's Services, term of engagement, compensation and provisions for payment thereof will be as set forth herein and in Exhibit A attached hereto, which may be amended in writing from time to time, or supplemented with subsequent arrangements for Services to be rendered by Partner as specifically agreed to by Company in writing and attached as an addendum to or amendment of Exhibit A, and which collectively are hereby incorporated by reference. All payments to Partner under this Agreement will be by ACH bank transfer or Paypal and in United States dollars.

**3. EXPENSES.** Partner will be responsible for all costs and expenses Partner incurs in performance of Partner's obligations set forth in this Agreement, unless specifically authorized in advance by Company. Pre-approved expenses will be billed to Company and Company will reimburse such pre-approved out-of-pocket expenses. Notwithstanding the foregoing, expenses for the time spent by Partner in traveling to and from Company facilities will not be reimbursable.

**4. COMMUNICATIONS; REPORTS.** Partner shall report to Company's founder or his or her designee in performing the Services. Such reports shall be made on a periodic basis during the term of this Agreement as approved by Company.

**Exhibit 2**

Founder: Travis S Kniep

8516 Anderson Mill Rd. Ste
200, Austin, TX 78729

## 5. EQUIPMENT; ACCESS TO COMPANY FACILITIES; THIRD PARTY ASSISTANTS.

**5.1. Equipment**. Partner has and will provide all necessary tools, supplies and equipment necessary to perform the Services. Company will not be required to supply to Partner any such tools, supplies or equipment. In the event Company does supply any equipment or software to Partner, such equipment or software shall be the responsibility of Partner and shall be returned to Company in good condition within three (3) days of the termination of this Agreement. If shipping is required to return equipment or software, Partner shall obtain prior approval from Company of insured shipping costs and carrier.

**5.2. Access to Company Facilities.** Except as specifically permitted by an authorized employee of Company, Partner will have no access to any Company facilities.

**5.3. Third Party Assistants.** In the event that Partner intends to utilize the services of persons other than employees of Company to perform the services as described in Section 2 and to assist Partner under this Agreement ("Third Party Assistants"), such Third Party Assistants shall be obligated under the terms of this Agreement on the same basis that Partner is so obligated. Unless otherwise agreed to, the obligations for compensation to any approved Third Party Assistants shall be solely the responsibility of Partner.

**6. CONFIDENTIALITY.** Partner acknowledges that during the engagement Partner will have access to and become acquainted with various trade secrets, inventions, intellectual property, know-how, methods, formulas, "hacks", innovations, processes, information, records and specifications owned or licensed by Company or Client and/or used by Company or Client in connection with the operation of its business including, without limitation, Company's or Client's business and product processes, methods, customer lists, login identifications, passwords, accounts and procedures. Partner agrees that Partner will not disclose any of the aforesaid, directly or indirectly, or use any of them in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with Company and Client. All files, records, documents, blueprints, specifications, computer files, information, letters, notes, media lists, original artwork/creations, notebooks, and similar items relating to the business of Company, will remain the exclusive property of Company. Partner will not retain any copies of the foregoing without Company's and Client's prior written permission. Upon the

expiration or earlier termination of this Agreement, or whenever requested by Company, Partner will immediately deliver to Company all such files, records, documents, specifications, information, and other items in Partner's possession or under Partner's control. Partner further agrees that Partner will not disclose Partner's retention as an independent Partner or the terms of this Agreement to any person without the prior written consent of Company and will at all times preserve the confidential nature of Partner's relationship to Company and of the Services hereunder.

**7. MARKETING AND INTELLECTUAL RIGHTS.** Partner acknowledges and agrees that Company will be given full admin access at every level to the Amazon store the Partner builds and will maintain this access unless the Client terminates the agreement. Partner acknowledges and agrees that any inventions, copy, intellectual property, trade secrets or strategies arising from the Services that qualify as works of authorship are able to be used and applied by Company for its own Amazon and marketing purposes, including but not limited to screenshots of the store sales, screenshots, example of strategies for PPC, marketing listing optimization, and any other strategies that arise or are used for the growth of the Amazon store. Partner releases all copyright, intellectual property or trade secrets claims and as well as any claims for royalties when Company applies and uses any of these strategies. Partner releases any claim or copyright on any strategies used and agrees the Company has full right to use and apply as needed for other Amazon stores and marketing its services throughout the term of this Agreement and at any time thereafter.

Throughout the term of this Agreement (and at any time thereafter), Partner agrees to present this service as a Just One Dime service, upholding and supporting the Just One Dime brand name and to not use this to advertise its own service. Partner agrees Company will use photographs, video clips or other media on websites and/or social media without the need for any consent of Partner.

**8. NON-INFRINGEMENT INDEMNITY.** Partner and Company for each of themselves hereby agree to defend, indemnify and hold harmless each other and each of their officers, directors, shareholders, agents, representations and employees from and against all claims, suits, obligations, liabilities, demands or causes of action (including costs and reasonable attorneys' fees) arising from any intellectual property infringement by the other or their agents in connection with this Agreement or Partners breach of the foregoing representation and warranty.

**9. CONFLICTS OF INTEREST; NON-SOLICITATION PROVISION;**

**9.1. No Conflict of Interest or Time.** Partner represents that Partner is free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between Partner and any third party. During the term of this Agreement, Partner will devote as much of Partner's productive time, energy and abilities to the performance of Partner's duties

Doc ID: 6b8bf61d1ae3b0c2cfd959c7ff52a31b9bb766cc

hereunder as is necessary to perform the required duties in a timely and productive manner.

**9.2.Partner Non-Solicitation.** The Partner acknowledges that during the Partner's relationship with Company, the Company will be providing the Partner, and the Partner will receive from the Practice, information and knowledge, including confidential information (as described in Section 6 above). Partner acknowledges that this confidential information is valuable to Company and, therefore, its protection and maintenance constitutes a legitimate interest to be protected by this covenant. Partner agrees and covenants that for the term of this Agreement and for a period of two (2) years after the termination or expiration of this agreement for any reason whatsoever, the Partner shall not either (i) directly as a partner, employer, agent, independent Partner, or employee, or (ii) indirectly through a corporation, partnership, affiliate, subsidiary, or otherwise, unless approved by the Company:

(a) solicit, induce, or attempt to induce, in connection with any business competitive with that of Company, customers of the Company (or its affiliates) to cease working with Company; or

(b) solicit, induce, or attempt to induce, any employee, consultant, referral source, owner, or other persons associated with Company to leave the employment of, or to discontinue their association with Company.

**10. RIGHT TO INJUNCTION.** Partner expressly agrees that Company will be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by Partner. Resort to such equitable relief, however, will not be construed to be a waiver of any other rights or remedies that Company may have for damages or otherwise. The various rights and remedies of Company under this Agreement or otherwise will be construed to be cumulative, no one of them will be exclusive of any other or of any right or remedy allowed by law.

**11. TERM AND TERMINATION.** The term of this Agreement shall be as set forth on Exhibit A. If there is no end date specified on Exhibit A, this Agreement shall be deemed to be for a term of one-year, with automatic one-year renewals unless either party decides to not renew upon written notice to the other at least 30 days' prior to the relevant end date. Either Party may terminate this Agreement, with or without cause, at any time by thirty (30) working days' written notice to the other party. In addition, if Partner is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directive of Company, is guilty of serious misconduct in connection with performance hereunder, or materially breaches provisions of this Agreement, Company at any time may terminate the engagement of Partner immediately and without prior written notice to Partner. Partner may terminate this Agreement if Company fails to pay any undisputed amounts within 90 days of receiving a written notice by Partner to Company certifying as to non-payment on a timely basis. The provisions of Sections 6, 7, 9, 10, 12, 15, 16 and 21 through 25 (inclusive) and any other provisions that by their terms anticipate survival shall survive the termination of this Agreement.

**12. INDEPENDENT CONTRACTOR.** This Agreement will not render Partner an employee, partner, agent of, or joint venturer with Company for any purpose and Partner does not have the authority to bind Company in any manner. Partner is and will remain an independent Partner in Partner's relationship to Company. Partner will have no claim against Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

**13. TAXES.** Partner will be responsible for payment of all taxes and insurance applicable under existing laws, including, but not limited to, social security taxes, and federal and state and city income taxes (but excluding any taxes on the net income of Company). Partner warrants that he will make all necessary payments due appropriate governmental agencies to comply with the foregoing and defend, indemnify and hold harmless Company and the officers, directors, Partners, agents, Affiliates and representatives of Company against any and all claims, demands, causes of action, damages, losses, liabilities, costs or expenses that may arise out of breach of the foregoing. In the event of any such claim, demand or cause of action, Partner will immediately reimburse Company for the ongoing costs of any defense, settlement or judgment incurred by Company.

**14. INFORMATION.** Partner represents and warrants to Company that all information provided by Partner is true and correct and that Partner has the right to provide such information. Partner will immediately notify Company in writing of any change in the accuracy of such information.

**15. SUCCESSORS AND ASSIGNS.** All of the provisions of this Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, if any, successors, and assigns.

**16. CHOICE OF LAW.** The laws of the State of Texas, without reference to conflict of law provisions, will govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

**17. HEADINGS.** Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

**18. WAIVER.** Waiver by one party hereto or breach of any provision of this Agreement by the other will not operate or be construed as a continuing waiver.

**19. ASSIGNMENT.** Partner shall not assign any of Partner's rights under this Agreement, or delegate the performance of any of Partner's duties hereunder, without the prior written

consent of Company.

**20. NOTICES.** Any and all notices, demands, or other communications required or desired to be given hereunder by any party will be in writing and will be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice will be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice will be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given at the above address. Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

**21. MODIFICATION OR AMENDMENT.** No amendment, change or modification of this Agreement will be valid unless in writing signed by the parties hereto.

**22. ENTIRE UNDERSTANDING.** This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

**23. UNENFORCEABILITY OF PROVISIONS.** If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement will nevertheless remain in full force and effect.

**24. ATTORNEYS' FEES.** If the services of an attorney are required by any party to secure the performance of this Agreement or otherwise upon the breach or default of another party to this
Agreement, or if any judicial remedy or arbitration is necessary to enforce or interpret any provision of this Agreement or the rights and duties of any person in relation thereto, the prevailing party will be entitled to attorneys' fees, costs and other expenses, in addition to any other relief to which such party may be entitled. Any award of damages following judicial remedy or arbitration as a result of the breach of this Agreement or any of its provisions will include an award of prejudgment interest from the date of the breach at the maximum amount of interest allowed by law.

**25. DISPUTE RESOLUTION**

**25.1. Arbitration.** In the event a dispute arises between the parties hereto arising out of or in connection with or with respect to this Agreement or any breach of this Agreement, the parties will first attempt to resolve such dispute by mediation. If the parties are unable to resolve such

dispute by mediation after a reasonable amount of time, either party may submit such dispute for determination by binding arbitration by a single arbitrator in Austin, Texas in accordance with the rules of the American Arbitration Association ("AAA"). The award rendered thereon by the arbitrator shall be final and binding on the parties thereto.

**25.2. No Class Actions.** The parties acknowledge and agree that (i) the Partner may only resolve disputes with the Company on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, collective, consolidated, or representative action and (ii) class arbitrations, class actions, collective actions, private attorney general actions, and consolidation with other arbitrations are not allowed.


**IN WITNESS WHEREOF** Partner and Company have agreed to this Agreement on this August 14th, 2020.

COMPANY: Just One Dime Coaching LLC

Founder: Travis Seth Kniep
Signature *Seth Kniep*

Partner: Brett George
Signature: *Brett George*

**Exhibit A**
**Services**

Partner will do the following:

- Open a new Amazon store for Client and give Company full admin access to the account.
- Research the market for high potential products.
- Find suppliers, build out a differentiation plan and manage the sourcing of the products.
- Manage the design process for retail packaging and company branding.
- Manage all logistics and shipping for the products from the supplier to Amazon's fulfillment centers.
- Create high-conversion listings and oversee photo and video creation for the listings.
- Outline a plan to launch the products on Amazon and scale them as rapidly as possible to high ranking and conversion.
- Create a holistic brand-building strategy for the products on Amazon.
- Split test the Amazon listings for conversion and optimize them for sales.
- Create a follow up sequence for Amazon customers so we can collect their contact info and drive them to a landing page, social media page, or other platform.
- Apply for brand-protection programs on Amazon so that no one can piggy-back the listing

- Build, test, and optimize Amazon PPC ads on the listings to increase ranking and conversion.
- Strategize new product launches by using PPC reports to find product variations shoppers are searching that no one is selling.
- Build and implement Amazon promotion launches, create Amazon-compliant motivation for organic 5-star reviews, and improve the listing's conversion based on PPC keyword reports.
- Identify and leverage trends for new products we can launch as complements to the main product.
- Differentiate the Amazon listing and products from competition Amazon.
- Ensure we are Amazon compliant and brand proof so the Amazon account remains healthy.
- Test various product lines on Amazon for real time customer feedback and proof of concept to determine the most profitable products to launch first.
- Identify and address hijackers, copycats, and copyright-infringing competitors.
- Respond to critical reviews and negative seller feedback

## Exhibit B
## Communication

Partner agrees that all communication with the client will be via a Slack group that Company sets up. For meetings, Partner will use the same Slack group for video chat with Client as needed.

Company founder or his representative will be in the Slack group to stay aware of the progress but Partner will be the sole communicator with the Client after the initial interview meeting led by Company before Client signs agreement.

Email, Skype, WhatsApp, WeChat, Messages, or phone calls or any other form of communication will not be used between Partner and Client.

## Exhibit C
## Financial responsibilities & Payouts

Partner is providing the service of building and managing the store.

Client is paying for all business costs including, but not limited to manufacturing, shipping, customs & duties, photography, product videos, PPC, Amazon FBA fees, etc.

FBA fees, the monthly Amazon professional account fee, and PPC fees will be paid to Amazon by the Client directly.

All other expenses will be paid by Client to the Company and then the company will pay the vendor directly. The vendor can include but is not limited to the photographer, supplier, or any other third party who provides a service to help build the store. The Partner will invoice the Client to pay the Company.

Client will pay Company a $10,000 service fee for each product that Partner launches, which includes finding, differentiating, sourcing, creating the listing for, launching, optimizing, advertising and scaling the product. Company will pay Partner 67% of each $10,000 fee.

Company will receive 15% revenue on a quarterly basis from Client. Company will pay Partner 67% of all gross profits collected by Company from Client. Payouts will be paid quarterly along with a monthly P&L report. Company will manage all bookkeeping and financials and send quarterly reports to Partner and Store Builder.

Client will pay Company directly for all third party extra services (such as photography, social media platform building, keyword and SEO optimization off the Amazon platform, etc.). Then Company will pay the vendor directly. On these services, Partner will include an up-charge to remain profitable in every transaction. Immediately upon receipt of the payment from Client to Company for the third party service, 67% of these up-charges will be paid by Company to Partner.

 **HELLOSIGN**

*Audit Trail*

| | |
|---|---|
| **TITLE** | Brand builder and JOD Coaching LLC Agreement |
| **FILE NAME** | Brand builder and...reement   (1).pdf |
| **DOCUMENT ID** | 6b8bf61d1ae3b0c2cfd959c7ff52a31b9bb766cc |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| SENT | **08 / 14 / 2020**<br>17:02:02 UTC-6 | Sent for signature to Brett George (brett@justonedime.com)<br>from seth@justonedime.com<br>IP: 24.55.25.104 |
| VIEWED | **08 / 14 / 2020**<br>17:11:54 UTC-6 | Viewed by Brett George (brett@justonedime.com)<br>IP: 107.77.196.129 |
| SIGNED | **08 / 18 / 2020**<br>08:56:32 UTC-6 | Signed by Brett George (brett@justonedime.com)<br>IP: 23.126.174.229 |
| COMPLETED | **08 / 18 / 2020**<br>08:56:32 UTC-6 | The document has been completed. |

**SCHEDULE 1:**
**RAIN MINNS UDALL'S JOD CLIENT GROUP - CLAIMS SUBMITTED TO TRUSTEE**

| CLT # | CLIENT/ENTITY | STRETTO #[1] | CLIENT CLAIM |
|------:|---------------|-------------|-------------|
| 1 | JOD: **Oakes**, Michael / Ondeblu | 507 | $155,622.92 |
| 2 | JOD: **Jacome**, Juan / Juela, LLC | 518 | $41,247.48 |
| 3 | JOD: **Gray**, Patrice / Patrice Gray LLC | 527 | $74,724.60 |
| 4 | JOD: **Krichman**, Travis | 522 | $94,248.39 |
| 5 | JOD: **Bonnici**, Anton | 437 | $45,327.00 |
| 6 | JOD: **Mutendereki**, Richard | 508 | $42,344.66 |
| 7 | JOD: **Iremizi**, David | 514 | $38,465.27 |
| 8 | JOD: **Franco**, David | 486 | $49,372.67 |
| 9 | JOD: **Paniq 1**, LLC | 440 | $34,262.20 |
| 10 | JOD: **Infinity 3**, LLC | 439 | $316,684.16 |
| 11 | JOD: **Galan**, Ben | 438 | $170,894.75 |
| 12 | JOD: **Fenzo**, Luigi | 506 | $51,142.40 |
| 13 | JOD: **Zaman**, Tanvir | 443 | $40,918.33 |
| 14 | JOD: **Loi**, Tan | 511 | $53,590.63 |
| 15 | JOD: **Basaran**, Gokhan | 468 | $72,511.10 |
| 16 | JOD: **Aalerud**, Nick | 441 | $69,576.45 |
| 17 | JOD: **Knudsen**, Tiffany / Tk Capitalco LLC | 465 | $54,099.49 |
| 17 | JOD: **Subach**, Denice, Deborah Yash / Launch Horse LLC | 504 | $45,644.09 |
| 18 | JOD: **White**, John | 484 | $75,786.23 |
| 19 | JOD: **Kelley**, Ian | 456 | $33,757.53 |
| 20 | JOD: **Martiner**, Gary / Lido Properties, LLC | 487 | $44,195.78 |
| 21 | JOD: **Simpson**, Elizabeth | 464 | $39,232.32 |
| 22 | JOD: **Kidwai**, Arshina & Asif **Ansari** / Pryme Cloud LLC | 454 | $47,664.12 |
| 23 | JOD: **Ta**, Ngoc ("Ivy") | 512 | $36,751.13 |
| 25 | JOD: **Habib**, Shahnaz & Quazi **Haque** / IZZ Enterprise LLC | 463 | $65,854.89 |
| 26 | JOD: **Cosely**, Melvin | 479 | $75,939.93 |
| 27 | JOD: **Donnelly**, Sandra | 477 | $82,037.09 |
| 28 | JOD: **Perez**, Joma | 502 | $41,415.50 |
| 29 | JOD: **Cummings**, Ryan | 515 | $39,440.87 |
| 30 | JOD: **Holzem**, Loren | 521 | $37,918.31 |
| 31 | JOD: **McCumber**, Teresa | 466 | $41,371.84 |
| 32 | JOD: **Looper**, Sabrina | 471 | $35,864.00 |
| 33 | JOD: **Matsumoto**, Gillie | 516 | $58,931.00 |
| 34 | JOD: **Mendez**, Jose | 448 | $42,850.25 |
| 35 | JOD: **Appea**, Yvonne and Alexander | 462 | $66,157.01 |
| 36 | JOD: **Truong**, Leeann | 451 | $109,524.41 |
| 37 | JOD: **Duran**, Michael (Don Miguel) | 447 | $85,092.30 |
| 38 | JOD: **Herrigel**, Michael / H3 Legacy Partners | 501 | $42,682.91 |
| 39 | JOD: **Hughes**, Sion and Dan **Madigan** | 449 | $47,670.00 |
| 40 | JOD: **Yang**, Catherine / WMB Studio PTE, Ltd | 474 | $34,957.00 |
| 41 | JOD: **Rector**, Joe | 523 | $404,521.81 |
| 42 | JOD: **Pilakka**, Justin / JOD Ecom LLC | 458 | $32,641.74 |
| 43 | JOD: **Teshome**, Hermela | 525 | $45,712.35 |
| 44 | JOD: **Battung**, Michael | 475 | $51,331.97 |
| 45 | JOD: **Lick**, Ted / TWL Brands LLC | 460 | $37,909.18 |
| 46 | JOD: **Payumo**, Jon | 480 | $48,867.13 |

## SCHEDULE 1:
## RAIN MINNS UDALL'S JOD CLIENT GROUP - CLAIMS SUBMITTED TO TRUSTEE

| CLT # | CLIENT/ENTITY | STRETTO #[1] | CLIENT CLAIM |
|---|---|---|---|
| 47 | JOD: **Diaz**, Carlos | 478 | $40,616.31 |
| 48 | JOD: **Amunson**, Kristi | 450 | $99,862.00 |
| 49 | JOD: **Williams**, Doug & Scott **Gibson** / Yellow Marble LLC / DS Works | 470 | $36,762.50 |
| 50 | JOD: **Kovalenko**, Mattis | 488 | $94,395.41 |
| 51 | JOD: **Rivera-Martinez**, Rodalys | 517 | $36,759.85 |
| 52 | JOD: **Gibbons**, Darnell / Ooboo Unlimited LLC | 483 | $38,699.85 |
| 53 | JOD: **DeSanctis**, Mark | 490 | $43,599.00 |
| 54 | JOD: **Glavcheva**, Veneta | 459 | $38,792.05 |
| 55 | JOD: **Wu**, Julius & Diane | 513 | $37,647.46 |
| 56 | JOD: **Rendon**, Andrew | 453 | $35,057.00 |
| 57 | JOD: **Au-Yeung**, Simon | 457 | $71,277.50 |
| 58 | JOD: **Maese**, Claudio | 452 | $32,298.00 |
| 59 | JOD: **VanOmmen**, Justin & Courtney | 524 | $45,973.00 |
| 60 | JOD: **Rivard,** Hannah | 526 | $37,488.67 |
| 61 | JOD: **Morgan**, Maxine / Synergywise LLC | 509 | $45,758.22 |
| 62 | JOD: **Yanes Diez**, Angela | 510 | $41,420.63 |
| 63 | JOD: **Fuller**, John & Steven **Pirovolikes** | 503 | $80,948.29 |
| 64 | JOD: **Thorson**, Evan | 461 | $36,850.00 |
| 65 | JOD: **Malik**, Zona & Shmoon **Asghar** | 426 | $30,000.00 |
| 66 | JOD: **Claire**, Molly & Aaron ("Bob") **Smith** | 473 | $76,626.83 |
| 67 | JOD: **Baseer**, Salman | 528 | $39,832.00 |
| 68 | JOD: **Portilla**, Noe | 542 | $38,914.86 |
| | | TOTAL: | **$4,336,334.62** |

[1] Several individuals, prior to their representation by the Rain Minns Law Firm, filed claims individually, and accordingly have more than one claim and claim number registered with Stretto.  The above Stretto numbers and claims should supercede any other filed claims by these clients.

## SCHEDULE 2
**Minns Law Litigation**

| Case No. | Plaintiffs | Defendants |
|---|---|---|
| 22-cv-01045-ADA | Michael Oakes | Just One Dime Coaching, LLC<br>Travis Seth Kniep<br>Danilo Varriale<br>Veritus Texas One, LLC<br>Actonicus Texas One, LLC<br>Josiah Kniep<br>Just One Dime, LLC<br>Kimberly Kniep |
| 22-cv-01105-ADA | Patrice Gray | Just One Dime Coaching, LLC<br>Travis Seth Kniep<br>Brett George<br>Just One Dime, LLC<br>Veritus Texas One, LLC<br>Actonicus Texas One, LLC<br>Josiah Kniep<br>Kimberly Kniep |
| 22-cv-01146-ADA | Travis Krichman<br>TCT Holdings, LLC | Just One Dime, LLC<br>Just One Dime Coaching, LLC<br>Veritus Texas One, LLC<br>Actonicus Texas One, LLC<br>Travis Seth Kniep<br>Brett George<br>Josiah Kniep<br>Kimberly Kniep |
| 22-cv-01196-ADA | Juan Jacome | Just One Dime, LLC<br>Just One Dime Coaching, LLC<br>Veritus Texas One, LLC<br>Actonicus Texas One, LLC<br>Travis Seth Kniep<br>Brett George<br>Josiah Kniep<br>Kimberly Kniep |
| 22-cv-01226-ADA | David Franco | Just One Dime Coaching, LLC<br>Travis Seth Kniep<br>Danilo Varriale<br>Veritus Texas One, LLC<br>Actonicus Texas One, LLC<br>Josiah Kniep<br>Just One Dime, LLC<br>Kimberly Kniep |