IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § § § | Case No. 22-10783-SMR |
| JUST ONE DIME COACHING, LLC, | § § § | Chapter 7 |
| Debtors.[1] | § § | |

**OBJECTION OF THE SKUNK LABS LLC TO THE TRUSTEE'S MOTION TO APPROVE LIMITED SETTLEMENT WITH CERTAIN CREDITORS PARTIES**
[Relates to Docket No. 205]

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

Skunk Labs, LLC ("Skunk Labs"), a creditor and party in interest of the Chapter 7 bankruptcy proceeding of Just One Dime Coaching, LLC (the "Debtor"), by and through its attorneys, Rabinowitz, Lubetkin & Tully, LLC and McGinnis Lochridge LLP hereby files this, its Objection to the Motion at Docket No. 205 (the "Motion") of Randolph N. Osherow (the "Chapter 7 Trustee") for the bankruptcy estate of the Debtor to approve a limited settlement with certain creditor parties, and respectfully shows unto the Court the following:

1. Skunk Labs is a New Jersey limited liability company which is a creditor and a party in interest in the Debtor's bankruptcy proceeding. Skunk Labs is not listed as a creditor in the Debtor's Voluntary Petition, Schedules and Statement of Financial Affairs, or subsequent amendments, and is not on the matrix in this matter. Skunk Labs only recently received written notice of the pendency of the Debtor's bankruptcy proceeding before Your Honor upon service of an Alias Summons and adversary proceeding Complaint (as described in paragraph 6 below) in

---

[1] The Debtor in this chapter 7 case, along with the last four digits of its federal tax identification number is: Just One Dime Coaching, LLC (1047). Other names the Debtor conducts business under as d/b/as include: Veritus a Series of Embue LLC and Done For You By Just One Dime.

late December 2023. Based on such late notice, Skunk Labs anticipates filing a proof of claim and will seek entry of a Bankruptcy Court Order authorizing its proof of claim as timely filed.

2. Skunk Labs was a party to an Amazon Store Builder Independent Partner Agreement (the "Agreement") with the Debtor effective as of August 6, 2020. Pursuant to the provisions of that Agreement, in circumstances where the Debtor contracted with third parties to create Amazon stores from which those parties would sell various products to the public, portions of the services obligated to be performed by the Debtor pursuant to its contractual arrangements with those third party customers in some instances would be performed by Skunk Labs. The Agreement makes it clear, and specifically provides in paragraph 12, that the nature of the relationship between the Debtor and Skunk Labs was that of independent contractors.

3. Skunk Labs asserts it timely and properly performed all of its obligations under the Agreement.

4. The Agreement contains a broad based arbitration provision requiring first mediation, and then arbitration before the American Arbitration Association, of all disputes "arising out of or in connection with, or with respect to" or "any breach of" the Agreement.

5. Prior to the commencement of the Debtor's bankruptcy proceeding, parties previously identified before the Court as the "Minns Firm Clients," filed five federal District Court lawsuits against certain defendants who also performed services for the Debtor under contracts similar to the Agreement. Skunk Labs was not named as a defendant in any of those pre-petition suits.

6. Subsequently, the Minns Firm Clients filed an adversary proceeding Complaint in the Debtor's bankruptcy case against many of the defendants which were listed as defendants in

the five pre-petition federal District Court lawsuits, and also included Skunk Labs and its principal Patrick Cupillari, as defendants in that adversary proceeding.

7. Despite the fact that the adversary proceeding Complaint is a suit by non-debtors, against non-debtor defendants, and asserts claims that were brought prior to the commencement of the Debtor's bankruptcy case, and alleges counts which do not involve the Debtor's assets, liabilities, or any of the enumerated matters set forth in 11 U.S.C. § 157(b)(2), the Minns Firm Clients assert in such Complaint that the adversary proceeding constitutes a "core proceeding," "arising exclusively under the provisions of the Bankruptcy Code."

8. The adversary proceeding Complaint recites that the plaintiffs therein, the Minns Firm Clients, are entering into a settlement agreement with the Debtor's Trustee "under which Plaintiffs are to pay certain consideration for the rights to pursue causes of action belonging to the Debtor." The Trustee's Motion seeks Court approval of that settlement agreement. Skunk Labs objects to that Motion for the reasons set forth below.

## Argument and Authority

9. As the Trustee implicitly acknowledges in his Motion, in accordance with Cadle Co. v. Mims (In re Moore), 608 F.3d 253 (5th Cir. 2010), in order to prevail on the Motion the Trustee must satisfy both the standards for Bankruptcy Court approval of a settlement set forth in In re Martin, 91 F.3d 389 (3d Cir. 1996), and the standards for approval of the sale of bankruptcy estate assets for the Motion to be approved.

10. As the Court is well aware, a court should approve a settlement only when it is fair and equitable and in the best interest of the estate. Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.), 68 F.3d 914, 917 (5th Cir. 1995) (citing American Can Co. v. Herpel (In re Jackson Brewing Co.), 624 F.2d 599, 602 (5th Cir. 1980)). Put differently, a court

must compare the terms of the compromise with the likely rewards of litigation. Ibid. In re Jackson Brewing Co., 624 F.2d 605 (5th Cir. 1980).

11. Five factors inform the fair and equitable analysis: (1) the probability of success in the litigation, with due consideration of uncertainty in fact and law; (2) the complexity, expense, and likely duration of the litigation, together with the inconvenience, delay, and collectability issues attendant to the action; (3) the paramount interests of creditors, with proper deference to their views; (4) whether the settlement is the product of arms-length negotiations, fraud, or collusion; and (5) other factors bearing on the wisdom of the compromise. Moore, 608 F.3d at 263 (citing Foster, 68 F.3d at 917-18).

12. In Foster, the Fifth Circuit vacated a settlement agreement based on its finding that the bankruptcy court had abused its discretion when it failed to show proper deference to the views of creditors. Foster, 68 F.3d at 918.

13. In applying the factors cited above, a court must apprise itself of the relevant facts and law in order to make an informed and intelligent decision. In re Alfonso, 2019 Bankr. LEXIS 2816, at *8 (Bankr. W.D. Tex. Sept. 6, 2019) (citing Official Comm. of Unsecured Creditors v. Moeller (In re Age Refining, Inc.), 801 F.3d 530, 541 (5th Cir. 2015)). In other words, the court must do more than "rubber stamp" a settlement. Ibid. See also In re Allied Props., LLC, 2007 Bankr. LEXIS 2174, at *12-13 (Bankr. S.D. Tex. June 25, 2007) (observing that "[t]he duty of a bankruptcy judge to reach an 'intelligent, objective and educated evaluation' of settlements cannot be carried out absent a sufficient factual background" (quoting United States v. AWECO, Inc., 725 F.2d 293, 299 (5th Cir. 1984))).

14. The movant bears the burden of proving that the settlement is fair and equitable and in the best interest of the estate. In re Adkins Supply, Inc., 2013 Bankr. LEXIS 4915, at *21 (Bankr. N.D. Tex. Nov. 15, 2013).

15. Applying these standards, bankruptcy courts in this State and District have refused to approve a settlement in circumstances similar to those present here. For instance, in Adkins, the court denied approval of a settlement of all claims against certain parties because the chapter 7 trustee had failed to fully identify the claims subject to the settlement. 2013 Bankr. LEXIS 4915, at *19 ("The Motion did not fully identify the potential causes of action subject of the settlement. At the hearing, the Trustee identified a possible RICO cause of action with the potential problem of proving an 'enterprise,' along with possible chapter 5 causes of action, presumably fraudulent transfers, that are potentially subject to offset by the claim made by [settling party]. The problem is that the Court is simply left with nothing more than speculating on possible factual scenarios that might support either the causes of action or the defenses to or weaknesses in the causes of action.").

16. Next, in Alfonso, the court denied a chapter 7 trustee's motion to approve a proposed settlement of an estate claim on the grounds that the settlement did not adequately account for the probability of success on the merits of the claim; the trustee relied on only general statements and legal conclusions, without any evidence to support the propriety of the settlement amount; to the extent that the settlement facilitated expeditious administration, any benefits were outweighed by the large discrepancy between, on the one hand, the potential recovery if the case were to proceed, and on the other hand, the settlement amount; and it appeared that the trustee sought to settle only so that he could disburse the settlement amount and close the case as soon as possible. Alfonso, 2019 Bankr. LEXIS 2816, at *9-13. See also In re Bradley, 2007 Bankr. LEXIS

5

1762, at *11-12 (Bankr. W.D. Tex. May 18, 2007) ("Under the terms of the settlement, the amount allocated to the estate for the benefit of all of the creditors is $12,000. Some of the $12,000 would necessarily go to Chapter 7 administrative expenses rather than unsecured creditors. If the [debtors] prevail at trial, the benefit to the estate would be increased, potentially paying all creditors in full. Of course, if the [debtors] do not prevail, the creditors would not receive any of the $12,000. . . . Because of the possibility of substantial recovery in the lawsuit; the small dividend to unsecured creditors under the proposed settlement; and the strong desire of the Debtors to pursue the claims at trial, the Motion to Approve the Compromise will be denied.").

17. And regarding the settlement of avoidance actions in particular, the court in Allied denied a chapter 7 trustee's motion to approve a compromise pursuant to which the trustee proposed to transfer to a creditor estate claims and causes of action, including avoidance claims. Allied, 2007 Bankr. LEXIS 2174, at *8. The court found that "[t]he Trustee offered no evidence relating to the existence or value of any claims the estate may have under Chapter 5." Id. at *15, 18. The court found, further, that the compromise provided no "material" benefits to the estate; and thus, to the extent that the compromise assigned to the creditor assets that would otherwise have been distributed pro rata among all unsecured creditors, the compromise violated the factor bearing on the wisdom of the proposed action. Id. at *18-19. See also In re Wilson, 2015 Bankr. LEXIS 1971, at *8-9 (N.D. Tex. June 17, 2015) (denying approval of chapter 7 trustee's settlement of fraudulent transfer claim because trustee offered no explanation or evidence on transferee's possible defense); In re Imperial Tooling & Mfg., Inc., 314 B.R. 340, 346-47 (Bankr. N.D. Tex. 2004) (holding that amount of proposed payment of $20,000 for settlement of chapter 7 trustee's avoidance and equitable subordination claims fell below range of reasonableness on grounds that even though estate had no unencumbered funds with which to work and estate faced delay,

6

expense, and uncertainty of who would represent trustee in the litigation at issue, trustee had a basis for prosecuting the claims and the risks to the defendant, including its costs of litigation and the potential recovery for the estate, even if it ultimately did not even benefit unsecured creditors, required a higher settlement amount); In re GPR Holdings, LLC, 2003 Bankr. LEXIS 1402, at *10-11 (Bankr. N.D. Tex. Oct. 29, 2003) (holding that court could not determine if settlement was in the best interests of creditors and fair and equitable without a complete evidentiary record addressing scenario in which estates prevailed on avoidance claim).

18. Despite being described as a settlement, in substance, the Trustee's Motion seeks Court authorization to sell and assign claims which are property of the Debtor's estate described in the settlement agreement as (i) contract claims and causes of action; (ii) claims to avoid and recover allegedly preferential and fraudulent transfers pursuant to the provisions of the Bankruptcy Code; (iii) claims to recover allegedly fraudulent transfers under state law; (iv) claims to make third parties liable for the Debtor's debts under alter ego or piercing the corporate veil theories; and (v) claims for securities law violations, with regard to the defendants named in the adversary and in the exhibit, as well as their affiliated entities.

19. In determining whether to approve a sale of bankruptcy estate assets, the Trustee must establish (a) a sound business reason for the sale; (b) accurate and reasonable notice to interested parties; (c) that the price is fair, reasonable, and adequate; and (d) that the sale is made to the purchaser in good faith. Moore, 608 F.3d at 263.

20. The consideration being provided to the estate in exchange for the proposed transfer, sale, and assignment of the subject claims is a $40,000 cash payment, and a reduction in the claims being asserted by the Minns Firm Clients in the amount of $48,492.69.

21. The Trustee's Motion provides no information on the anticipated dividend to general unsecured creditors or the amount of allowed claims, such that there is no ability to measure the true value of the $48,492.69 claims waiver.

22. Likewise, the Trustee offers no analysis of the value of the estate's claims and causes of action or whether the settlement of such claims generates fair value for the estate.

23. The only assertion in the Motion respecting the <u>Martin</u> factors, or that the sale price is fair, reasonable, and adequate, is the unsupported, generic recitation that "substantial collectability issues may arise" if the Trustee pursues the claims which are the subject of the intended assignment to the Minns Firm Clients.

24. There is no description of the alleged breach of contract claims which the Debtor holds, or the identification of the damages, if any, directly and proximately caused to the Debtor thereby.

25. There is no identification of the alleged avoidable preferences, nor the potential defenses the Trustee is obligated to consider in good faith before pursuing those claims.

26. There is no description of the alleged fraudulent transfers, or whether the bases of such claims is the intent to hinder, delay, or defraud creditors, or whether they are premised on a lack of fair consideration and the Debtor's insolvency at the time of the transfer.

27. There is no identification of the date of any alleged fraudulent transfer, or the asset transferred, or the recipient, or any facts supporting the Debtor's insolvency at such time.

28. There is no recitation of the facts which purportedly support any alter ego or piercing the corporate veil claims, nor any identification of the parties whose conduct and relationship with the Debtor allegedly satisfies the elements of those claims.

29. There is no identification of the securities laws claims purportedly violated, nor the parties who allegedly engaged in such conduct, let alone the remedies which result from any determination of liability.

30. There is no analysis of the financial wherewithal of the potential defendants to determine whether they would be able to satisfy any judgments.

31. The absence of any of this analysis is particularly troubling given the Trustee's statements in the Motion that he consulted with "potential contingency counsel" "regarding the Estate's litigation claims." What was the result of that consultation? Were the claims which were the subject of the consultation the same claims the Trustee seeks to assign? Did potential counsel refuse the engagement? Did potential counsel conclude the claims were not legally sustainable?

32. Similarly, the Motion asserts the Trustee, through his retained financial advisors, conducted a "forensic analysis of the Estate's potential litigation claims." Where is that analysis? Did it include an avoidable preference review identifying potential claims and defenses? Did it involve a solvency analysis? Did it identify potential fraudulent transfers, including alleged recipients and potential liability amounts, as well as the ability of those recipients to satisfy judgments?

33. Moreover, as concerns the avoidable preference claims and the Bankruptcy Code (as opposed to state law) fraudulent transfer claims which the Trustee seeks to sell, the Motion wholly ignores the unsettled nature of the law surrounding a bankruptcy estate's ability to transfer such claims, and the numerous cases holding that outright sales of avoidance actions <u>created by the Bankruptcy Code, including preference claims under 11 U.S.C. § 547, are impermissible</u>. See, <u>Briar Cap. Working Fund Cap., LLC v. Remmert</u>, 2022 U.S. Dist. LEXIS 163689 (S.D. Tex. 2022), and cases cited therein. As set forth therein, the vast majority of cases hold that avoidable

preference claims cannot be sold and as a result, any order approving the Motion must explicitly exclude from its provisions any purported assignment of avoidable preference claims or fraudulent transfer claims which arise under the Bankruptcy Code.

34. With respect to claims and causes of action that can be assigned, while the Trustee apparently provided to the Minns Firm Clients "all of the Debtor's and the Estate's records and documents relating to any and all of the Assigned COAs," Motion (ECF No. 205) Exh. A ¶ 5(c), the Trustee not only fails to provide parties in interest and this Court with any such documents, or any evidence for that matter, he speaks of the claims and causes of action in only general terms and offers no analysis of the probability of success in litigation, including any assessment of defenses to the claims and causes of action, or the complexity, expense, and likely duration of litigation.

35. Further, the Trustee attempts to support the Motion on the basis of preserving the "precious liquidity" of the bankruptcy estate and the bald assertion that recoveries on the claims which are being assigned would be "speculative."

36. As concerns the estate's purported "precious liquidity," the Trustee has provided no details respecting the proceeds currently residing in the estate, and what dividend appears to be available to the various classes of creditors based upon the liquidated proceeds as currently exists. A submission of the Trustee's Forms 1 and 2 identifying all assets of the estate and all the financial transactions of the estate is most appropriate for parties in interest and the Court to consider. Based upon the Debtor's Schedules and Statement of Financial Affairs, as of the commencement of the bankruptcy proceeding, the estate had in excess of $1,000,000 in cash, and the docket reflects subsequent sales of real properties that generated further significant sums. The docket also reflects the allowance of administrative expenses to the Trustee's accountants and the Trustee's attorneys,

10

all of which suggests the estate is flush with cash, not burdened by insufficient liquidity which precludes prosecution of claims having merit. If the claims being assigned have no merit, the Trustee should expressly say so. If the claims have some merit, but their value is insufficient under a cost benefit analysis, the Trustee should expressly say so. The absence of any such commentary suggests a deference to the litigation strategy of the buyers, not the best interests of the estate, and if not rising to the level of collusion, certainly causes questions about the good faith status of the buyers.

37. In conclusion, it is respectfully submitted that the Trustee has wholly failed to satisfy his burden under both the settlement approval parameters and the sale approval standards which govern the Motion.

38. While Skunk Labs fully respects the discretion provided to a Chapter 7 trustee, and notes that one of its attorneys is a Chapter 7 panel trustee in the District of New Jersey, the presentation made by the Trustee herein is woefully insufficient to enable a third party creditor, party in interest, or the Court to objectively conclude the Trustee's decision to sell the subject claims is supported by good faith business judgment which satisfies the legal standards governing approval of a settlement and sale of assets.

39. Unless or until the Trustee substantially enhances the proofs before the Court which justify approval of the settlement and sale, the Trustee's Motion must be denied.

Dated: January 8, 2024

Jay L. Lubetkin
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07083
Telephone: (973) 597-9100
Facsimile: (973-597-9119)
E-mail: jlubetkin@rltlawfirm.com

11

and

By:   */s/ Christopher L. Halgren*
    Christopher L. Halgren
    State Bar No. 24069859
    McGinnis Lochridge LLP
    609 Main St, Suite 2800
    Houston, TX 77002
    Telephone: (713) 615-8539
    Facsimile: (713) 328-1839
    E-mail: chalgren@mcginnislaw.com

ATTORNEYS FOR SKUNK LABS LLC

# **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that, on the 8th day of January 2024, they personally caused true and correct copies of the foregoing pleading, together with all attachments hereto, to be served (a) by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the parties receiving same through such system as listed in the attached Matrix, and (b) on the parties shown on the below service list, via the Court's CM/ECF system, first class U.S. Mail and/or e-mail.

| | |
|---|---|
| Randolph N Osherow<br>342 W Woodlawn, Suite 100<br>San Antonio, TX 78212<br>(210) 738-3001<br>*Chapter 7 Trustee* | Jay H. Ong, Esq.<br>Thanhan Nguyen<br>Munsch Hardt Kopf & Harr, P.C.<br>1717 West 6th Street, Suite 250<br>Austin, Texas 78703<br>*Counsel to the Chapter 7 Trustee* |
| Rain Levy Minns Udall, Esq.<br>Minns Law Firm, P.C.<br>d/b/a Rain Minns Law Firm<br>4412 Spicewood Springs Rd., Suite 500<br>Austin, Texas 78759-8583<br>*Counsel to the Minns Firm Clients* | |
| Just One Dime Coaching, LLC,<br>8516 Anderson Mill Rd. Ste 200<br>Austin, TX 78729<br>*Debtor* | Iain L. C. Kennedy<br>Email: efile@nathansommers.com<br>Ronald J. Sommers<br>713-960-0303<br>Email: ikennedy@nathansommers.com<br>Nathan Sommers Jacobs, P.C.<br>2800 Post Oak Blvd. 61st Floor<br>Houston, TX 77056<br>*Counsel for Debtors* |

                                                        By: */s/ Christopher L. Halgren*
                                                              Christopher L. Halgren